**Lynne DELANO, Secretary of the Department of Corrections, and the State of South Dakota, Plaintiffs and Appellants,**

v.

**Willard G. PETTEYS, Defendant and Appellee.**

**No. 18567.**

Supreme Court of South Dakota.

Considered on Briefs on May 25, 1994.

Decided Aug. 10, 1994.

Mark Barnett, Atty. Gen., Todd A. Love and Charles D. McGuigan, Asst. Attys. Gen., Pierre, for plaintiffs and appellants.

Steve Miller, Sioux Falls, for defendant and appellee.

AMUNDSON, Justice.

Lynne Delano and the State of South Dakota appeal the trial court's grant of Willard G. Petteys' motion for summary judgment in a declaratory judgment action. We affirm.

## FACTS

Willard G. Petteys (Petteys) was convicted of sexual contact with a child under sixteen years of age on March 27, 1987. As a factual basis for his guilty plea, Petteys admitted that he performed an act of oral sex upon a nine-year-old boy. Petteys was sentenced to the maximum penalty: ten years' incarceration at the South Dakota State Penitentiary. Upon placement in the penitentiary, Petteys received three and one-half years good conduct time pursuant to SDCL 24–5–1.[1] After deducting this good conduct time, Petteys' scheduled release date was October 14, 1993.

While incarcerated, Petteys sent numerous letters to various counselors, attorneys, and the judge who sentenced him. Many of these letters expressed his belief that he had done nothing wrong, that it is appropriate to have sexual relations with minors, and that he had no remorse because he felt his victim enjoyed the sex act. Petteys has been diagnosed as a fixated homosexual pedophile.

During the 1993 legislative session, the South Dakota State Legislature amended SDCL 24–2–18 by adding the following sentence: "The warden may also at any time prior to the inmate's final discharge recommend to the secretary of corrections that the reduction of time for good conduct under § 24–5–1 be withheld in full or in part for conduct evincing an intent to reoffend or commit further offenses when discharged."[2] This amendment became effective July 1, 1993.

On September 14, 1993, Acting Warden Steve Lee issued a recommendation to Secretary Lynne Delano that all of Petteys' good conduct time be withheld pursuant to SDCL 24–2–18 because of his likelihood to reoffend upon release. At a hearing in the penitentiary on September 21, 1993, evidence of Petteys' likelihood to reoffend and his lack of response to sex offender rehabilitation was presented.

After considering this evidence and the letters written by Petteys, the hearing examiner found that Petteys' conduct evinced an intent to reoffend if discharged. Based on this finding, the hearing examiner recommended that all of Petteys' good conduct time be withheld as now authorized by the amendment to SDCL 24–2–18. On September 30, 1993, Delano adopted the hearing examiner's recommendation in an order withholding all of Petteys' good conduct time credits.

Shortly thereafter, State filed this declaratory judgment action seeking a determination of whether application of SDCL 24–2–18, as amended in 1993, violated Petteys' constitutional rights. The trial court held a hearing on the parties' cross-motions for summary judgment based on stipulated facts. The trial court ruled that application of the amended version of SDCL 24–2–18 violated Petteys' rights under the *ex post facto* clause of the United States and South Dakota Con-

---

1. SDCL 24–5–1 (1987) provides:

   Every convict sentenced for any term less than life, and subject to the provisions of § 24–2–17 and 24–2–18, shall be entitled to a deduction from his sentence for each year and pro rata for any part of a year as follows: for the first two years, a deduction of two months each year; for the third year, three months; for the fourth year and the tenth, four months for each year; for the tenth year and for each year thereafter until the expiration of the period of the sentence as pronounced by the court, six months for each year.

2. SDCL 24–2–18 provides:

   The warden may, at any time prior to an inmate's final discharge, consider recommendations of the disciplinary committee pertaining to the withholding of statutory time granted for good conduct and may recommend to the secretary of corrections that the reduction of time for good conduct under and by virtue of § 24–5–1 be withheld in full or in part. *The warden may also at any time prior to the inmate's final discharge recommend to the secretary of corrections that the reduction of time for good conduct under § 24–5–1 be withheld in full or in part for conduct evincing an intent to reoffend or commit further offenses when discharged.*

   The secretary shall, after hearing, fix the amount of time earned by good conduct to be withheld. The decision of the secretary is final. (Emphasis added).

stitutions because no "conduct" occurred after the amendment to SDCL 24–2–18 became effective. State now appeals the trial court's grant of summary judgment.

## ISSUE

Did the circuit court err as a matter of law in concluding that revocation of Petteys' good conduct time pursuant to SDCL 24–2–18 was a violation of the *ex post facto* clause?

At the trial court level, State argued that the 1993 amendment could be applied retrospectively to withhold Petteys' good conduct time. The trial court held that such an application violates Petteys' rights under the *ex post facto* clause. Now, on appeal, State argues that Petteys' rights under the *ex post facto* clause were not violated by the amended version of SDCL 24–2–18 because the 1993 amendment did not cause a disadvantage to Petteys. State asks this court to interpret the amendment not as an affirmative grant of power that did not exist prior to 1993, but rather as a "legislative rationalization of the discretion that already existed."

Both the United States and the South Dakota Constitutions prohibit the imposition of *ex post facto* laws. U.S. Constitution, Art. I, § 10; S.D. Constitution, Art. VI, § 12. The trial court held that application of the 1993 amendment violated the *ex post facto* clause because Petteys exhibited no "conduct evincing an intent to reoffend" after July 1, 1993, the effective date of the amendment.

The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed.... [O]ur decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto;* it must be retrospective, that is it must apply to events occurring by its enactment, and it must disadvantage the offender affected by it.

*Stumes v. Delano,* 508 N.W.2d 366, 371 (S.D. 1993) (citing *Weaver v. Graham,* 450 U.S. 24,

28, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17, 22–23 (1981)) (emphasis added).

In its reply brief, State concedes that Petteys has exhibited no "conduct evincing an intent to reoffend" since the amendment became effective. State also concedes, "that if the power to revoke Petteys' good [conduct] time does not exist under the 1987 version of SDCL 24–2–18, that application of the 1993 amendment is an *ex post facto* application." (Emphasis added.)

In light of these concessions, this case boils down to an interpretation of SDCL 24–2–18, as it existed prior to the 1993 amendment. "The construction of a statute is a question of law." *Petition of Famous Brands, Inc.,* 347 N.W.2d 882, 884 (S.D.1984) (collecting cases). Therefore, the trial court's decision is fully reviewable. *Id.*

The purpose of rules regarding the construction of statutes is to discover the true intention of the law, and said intention is to be ascertained by the court primarily from the language expressed in the statute.

In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.

While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

One of the primary rules of statutory ... construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain, and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute.

*Petition of Famous Brands Inc.,* 347 N.W.2d at 884–85 (citations omitted).

At the time of Petteys' offense, and when sentenced in 1987, SDCL 24–2–18 provided:

The warden may, at any time prior to a convict's final discharge, consider recommendations of the disciplinary committee pertaining to the withholding of statutory time granted for good conduct and may recommend to the board of charities and corrections that the reduction of time for good conduct under and by virtue of § 24–5–1 be withheld in full or in part. The board shall, after hearing, then fix the amount of time earned by good conduct to be withheld. The decision of the board is final.[3]

As stated above, the 1993 amendment provided for a loss of good time "for conduct evincing an intent to reoffend or commit further offenses when discharged." The legislative history of the amendment shows its purpose was to *revise* certain provisions relating to the recommendation of good time." *See* the enacting clause to 1993 South Dakota Session Laws, Chapter 186.[4]

State argues that this amendment was nothing more than the "legislative rationalization of the discretion that already existed."[5] State asks this court to interpret the "old law", as it existed in 1987, as giving the Warden discretion to recommend that good conduct time be withheld based on recommendations of the disciplinary committee *or* for conduct evincing an intent to reoffend. This interpretation conflicts with the presumption that the 1993 legislature did not intend a meaningless or ineffective result when adding the new language to SDCL 24–2–18. *Nelson v. School Board of Hill City,*

459 N.W.2d 451, 455 (S.D.1990). This court will not construe a statute in a way that renders parts to be duplicative and surplusage. *Farmland Insurance Companies v. Heitmann,* 498 N.W.2d 620 (S.D.1993); *Revier v. School Board of Sioux Falls,* 300 N.W.2d 55, 57 (S.D.1980). This court is to presume that the legislature's 1993 amendment was passed to change existing law and "that the legislature intended to alter the meaning of the statute to comport with the new terms." *John Morrell & Co. v. Dept. of Labor,* 460 N.W.2d 141 (S.D.1990); *Rosander v. Bd. of Cty. Comm'rs,* 336 N.W.2d 160 (S.D.1983); *State v. Heisinger,* 252 N.W.2d 899 (S.D.1977).

The amendment obviously grants the warden additional power to recommend withholding a convict's good conduct time. The amendment clearly states, "[t]he warden may *also* ... recommend ..." The term "also" must be understood in its plain, ordinary sense. SDCL 2–14–1; *Petition of Famous Brands, Inc.,* 347 N.W.2d 882. Webster's defines "also" as "likewise; in addition; as well; besides; too." Webster's Third New International Dictionary 62 (1976). This indicates the legislature intended to create an additional basis for withholding a convict's good conduct time. To hold otherwise would render the 1993 Legislature's actions surplusage.

Prior to the amendment, the plain language of SDCL 24–2–18 provided a single basis for withholding time granted for good conduct. This basis being the warden could consider the recommendation of the disciplinary committee[6] and then recommend to the

3. In 1989 the legislature changed the deciding authority from the board of charities and corrections to the secretary of corrections (Delano). The legislature also made other minor changes in 1989, none of which are relevant to this appeal. *See* 1989 S.D.Sess.L. ch. 20, § 96.

4. The enacting clause states: "An Act to revise certain provisions relating to the recommendation of good time."

5. State claims the statutory provisions for withholding good conduct time demonstrate a legislative intent to permit the warden to exercise discretion in recommending withholding good conduct time. However, the statutes cited by the State are inapplicable as they involve the loss of

good conduct time while the convict is held in punitive confinement for violating institutional rules. SDCL 24–2–9, 12, 12.1. Further, State made no showing in this record that inmates routinely have had good conduct time revoked for "conduct evincing an intent to reoffend" under the statutes in effect prior to the 1993 amendment.

6. The disciplinary board's recommendation is based on the inmate's record of violating the rules, regulations or policies of the board of charities and corrections. SDCL 24–2–9(1) & ARSD 17:50:07:02. It is undisputed that Petteys was not a disciplinary problem while incarcerated.

board of charities and corrections (Delano) that the reduction of time for good conduct be withheld in full or in part. The 1993 amendment provides an *additional* basis for withholding a convict's good conduct time because the convict evinced an intent to reoffend or commit further offenses when discharged. This basis was not available until the 1993 amendment.

State cites numerous cases in an effort to overcome the *ex post facto* application of this amendment. State contends that these cases support the assertion that the amendment is simply a "rationalization of discretion" rather than an affirmative grant of authority. *Conlogue v. Shinbaum,* 949 F.2d 378 (11th Cir. 1991), *cert. den.* —— U.S. ——, 113 S.Ct. 123, 121 L.Ed.2d 79 (1992); *Resnick v. United States Parole Comm'n,* 835 F.2d 1297 (10th Cir.1987); *Damiano v. Florida Parole and Probation Comm'n,* 785 F.2d 929 (11th Cir. 1986); *Yamamoto v. United States Parole Comm'n,* 794 F.2d 1295 (8th Cir.1986); *Paschal v. Wainwright,* 738 F.2d 1173 (11th Cir. 1984); *Dufresne v. Baer,* 744 F.2d 1543 (11th Cir.1984); *Warren v. United States Parole Comm'n,* 659 F.2d 183 (D.C.Cir.1981). After reviewing these cases, we find that they are clearly distinguishable. These cases involve amended guidelines for the *discretionary* grant of parole. In this case, the Secretary of Corrections denied Petteys statutorily entitled good conduct time pursuant to an amendment which became effective well beyond the time of his conviction and the period during which Petteys earned good conduct. Petteys' good conduct reduction was *not discretionary* but was *mandatorily granted* by SDCL 24–5–1.

SDCL 24–2–18 did not authorize the withholding of a convict's good conduct time for "conduct evincing an intent to reoffend or commit further offenses when discharged" until the 1993 amendment was passed. Therefore, as the State concedes in its reply brief, withholding Petteys' good conduct time for such conduct is a violation of his rights under the *ex post facto* clause because the 1993 amendment is "more onerous than the prior law." *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1987).

Affirmed.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.