*1999 SD 109*

**Marilyn Clark LUCERO, Plaintiff and Appellant,**

v.

**Lila VAN WIE, Defendant and Appellee.**

**No. 20787.**

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided Aug. 11, 1999.

Rehearing Denied Sept. 9, 1999.

Reed C. Richards of Richards and Richards, Deadwood, South Dakota, Attorneys for plaintiff and appellant.

Timothy J. Vander Heide of Bakewell, Vander Heide & Witt, Custer, South Dakota Attorneys for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Marilyn Clark Lucero (Lucero) appeals from the trial court's order granting partial summary judgment[1] in favor of Lila Van Wie (Van Wie). The trial court determined that the property disclosure provisions of SDCL 43–4–38 through SDCL 43–4–44 were waived by the parties freely negotiated contract which provided the property was to be purchased "as is." We affirm.

### FACTS

[¶ 2.] Van Wie lived in a rural area outside of Custer, South Dakota, on approximately 82 acres of property. Lucero and Van Wie were close personal friends. Lucero would frequently visit Van Wie at her residence and, on occasion, spend the evening. Throughout the term of this friendship, Lucero frequently expressed a desire to purchase the property when Van Wie was ready to sell.[2]

[¶ 3.] In 1996, the parties entered negotiations for the sale of the property. Ultimately, a purchase price of $240,000[3] was decided upon. An offer and purchase agreement was signed by the parties. Subsequently, the parties signed a contract for deed for the sale of the property. Both the offer and purchase agreement

---

1. The court denied Van Wie's motion for partial summary judgment to foreclose on the contract for deed on Van Wie's counterclaim.

2. In her deposition Lucero testified:

Q: And when do you recall first becoming interested in purchasing her property here in Custer?

A: I suppose the first time I set foot on it I loved it. I loved her, I loved Perry. I felt very comfortable there.

\* \* \*

Q: And for how many years had you been discussing with Lila the fact that you wanted to purchase her property when she decided to move out of it?

A: We had discussed it for several years. But it wasn't a stipulation that she move out of it. I said that I would some day like to buy it if she was ready to sell but that she could stay there as long as she wanted.

3. Van Wie testified in her deposition this figure was below appraisal value of the property.

and the contract for deed contained a clause providing that the property was purchased "as is." The "as is" clause provided:

> The buyer acknowledges that she has examined the premises and the same are in satisfactory condition and they accept the property in the "as-is" condition, and agree to keep the property and all improvements thereon in a good state of good repair subsequent to closing and throughout the term of this Contract for Deed.

Lucero acknowledges, not once, but twice having read these clauses and having been provided an opportunity to inspect the premises.[4]

[¶ 4.] Prior to closing on the property, Lucero entered the premises and began remodeling and repairing the residence. As the remodeling and repairing of the residence continued, Lucero claims to have encountered unanticipated repairs. The total cost expended for repairing and fixing the premises amounted to approximately $32,510.39.

[¶ 5.] Lucero brought an action seeking reimbursement for repairs, claiming Van Wie was liable for these costs due to her failure to provide a disclosure statement pursuant to SDCL 43–4–37 through 43–4–

44. The trial court denied Lucero's claim, concluding the contractual provisions in the contract for deed, which provided that the property was purchased "as is," waived statutory disclosure requirements. Lucero's sole issue on appeal is whether statutory disclosure requirements (SDCL 43–4–37 through 43–4–44) can be waived through a contractual provision which provided that the property was to be purchased "as is."

## STANDARD OF REVIEW

■ · [¶ 6.] The issue on appeal raises a question of statutory interpretation. The construction and application of statutes are reviewed de novo, with no deference to the trial court. *LPN Trust v. Farrar Outdoor Advertising, Inc.,* 1996 SD 97, ¶ 8, 552 N.W.2d 796, 798 (citing *In re Estate of Pierce,* 531 N.W.2d 573, 575 (S.D.1995); *Muhlenkort v. Union County Land Trust,* 530 N.W.2d 658, 660 (S.D.1995)). "Since there are no factual issues in this case, summary judgment will be affirmed if the trial court correctly decided the legal issues presented." *Ward v. Midcom, Inc.,* 1998 SD 10, ¶ 9, 575 N.W.2d 233, 236 (citing *Weiss v. Van Norman,* 1997 SD 40, ¶ 9, 562 N.W.2d 113, 115 (citations omitted)).

---

4. Lucero testified in her deposition

Q: Did you notice that the offer and agreement to purchase contains a provision entitled, "as is purchase"?
A: Yes.
Q: And you're aware that you acknowledged that you've been provided with the opportunity to inspect the property; is that right?
A: I don't know. I guess I never gave that much thought.
Q: Let me just read into the record the provision. It says, "Buyer"—you understand that's you; is that correct?
A: Right.
Q: —"Acknowledges that she has been provided with the opportunity to inspect the real property and the appurtenances and in fact has so inspected the property and appurtenances." You recognize that?
A: Yes.

Q: It goes on to say, "and the buyer accepts the described property as is without any warranty from the seller except as to title to the premises at the time of closing." You're familiar with that is that correct?
A: Well, you just read it, yes.
Q: Likewise, a contract for deed was entered into on the 2nd of May, 1996; is that correct?
A: Right.
Q: And that contract for deed contains a provision that indicates that you're buying the property "as is" is that correct?
A: Yes. I just didn't know what "as is" was.
     * * *
Q: You did understand, though, that you were accepting the property in its "as is" condition; is that correct?
[Plaintiff's attorney]: You signed the contract, right?
A: Yes, I signed the contract.

## DECISION

**[¶ 7.] Whether parties can waive statutory disclosure requirements through a contract providing that the property was to be purchased "as is."**

[¶ 8.] Lucero cites this Court's decision in *Engelhart v. Kramer*, 1997 SD 124, 570 N.W.2d 550, as determinative of the present issue. However, *Engelhart* is not determinative. While in *Engelhart*, we held that a disclosure statement must be given in good faith, we did not address whether under the statutory scheme such disclosure statements could be waived through a party's freely entered and negotiated contract. 1997 SD 124, ¶ 12, 570 N.W.2d at 553. In the present case, a disclosure statement was not completed. Instead, the parties entered into a freely negotiated contract, which contained an "as is" clause. The "as is" clause provided that the buyer acknowledged she had been provided an opportunity to inspect the premises and had so inspected and accepted the property "as is." We now address whether a party to a private transaction can contractually waive entitlement to a real estate disclosure statement as contemplated by statute. We conclude that nothing in the statutory framework precludes that possibility.

[¶ 9.] SDCL 43-4-38 provides in relevant part: "The seller of residential real property shall furnish to a buyer a completed copy of the disclosure statement before the buyer makes a written offer." This disclosure shall be made "in good faith." SDCL 43-4-41; *Engelhart*, 1997 SD 124, ¶ 10, 570 N.W.2d at 552. However, SDCL 43-4-42 provides that transfer is not invalidated for failure to comply with these disclosure statutes. SDCL 43-4-42 provides:

A transfer that is subject to §§ 43-4-37 to 43-44, inclusive, is not invalidated solely because a person fails to comply with §§ 43-4-37 to 43-4-44, inclusive. However, a person who intentionally or who negligently violates §§ 43-4-37 to 43-4-44, inclusive, is liable to the buyer for the amount of the actual damages and repairs suffered by the buyer as a result of the violation or failure. A court may also award the buyer costs and attorney fees. Nothing in this section shall preclude or restrict any other rights or remedies ■the buyer.

[3] [¶ 10.] In applying legislative enactments, we must accept them as written. *South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 17, 589 N.W.2d 206, 209. This Court has frequently stated:

> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

*Id.; Delano v. Petteys*, 520 N.W.2d 606, 608 (S.D.1994) (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 884-85 (S.D. 1984)). Finding no language within the statutory framework precluding the possibility of waiving the furnishing of a disclosure statement, we refuse to supply omitted language to achieve such result. Therefore, we conclude that under the statutory framework, waiver is ■ precluded.[5]

[4] [¶ 11.] However, this does not end the inquiry. In order to decide whether

---

5. Further support for this conclusion is provided by the disclosure form in SDCL 43-4-44, whereby parties may provide for appropriate provisions as negotiated in the parties' contract. SDCL 43-4-44 provides in part and in capital letters:

THE SELLER AND THE BUYER MAY WISH TO OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO OBTAIN A TRUE REPORT AS TO THE CONDITION OF THE PROPERTY *AND TO PROVIDE FOR APPROPRIATE PROVISIONS IN ANY CONTRACT OF SALE AS NEGOTIATED BETWEEN THE SELLER AND THE BUYER* WITHOUT RESPECT TO SUCH PROFESSIONAL ADVICE AND INSPECTIONS. (Emphasis added.)

waiver is allowable, we must determine whether private or public interests are at issue. "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." *Loughrin v. Superior Court,* 15 Cal.App.4th 1188, 1193, 19 Cal.Rptr.2d 161, 163 (1993) (quoting Cal. Civ.Code § 3513 (West 1998)). *See also, Tunkl v. Regents of University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 39, 383 P.2d 441 (1963). *See also, Kobbeman v. Oleson,* 1998 SD 20, ¶ 22, 574 N.W.2d 633, 640 (concluding statute of limitations could not be waived because of the combined private and public interests involved).

[¶ 12.] In addressing the issue whether the disclosure requirements and the waiver thereof involved public or private interests, the California Court of Appeals in *Loughrin v. Superior Court,* 15 Cal. App.4th 1188, 1193, 19 Cal.Rptr.2d 161, 163 (1993) stated:

A transaction involving the public interest is one...which exhibits some or all of the following characteristics:

It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may

pay additional reasonable fees and obtain protection against negligence. Finally as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents. *Tunkl v. Regents of University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 37–38, 383 P.2d 441 (1963).

[¶ 13.] Considering the facts of the present case, we determine none of the characteristics for creating a "public interest" exist in this private real estate purchase and sale transaction. *See Loughrin,* 15 Cal.App.4th at 1193, 19 Cal.Rptr.2d at 163. This is not a case where property was listed by a real estate broker and there was no opportunity to negotiate the price. Further, this does not involve a contract of adhesion where a real estate broker attempted to include an exculpatory clause in a contract. *Loughrin,* 15 Cal. App.4th at 1194, 19 Cal.Rptr.2d at 164 n. 2. Quite the contrary, in the present case, the transaction was private in nature. Neither party was in a superior bargaining position and the contract was negotiated between the parties. Because the interests at issue are private, not public, the requirements are subject to waiver.

[¶ 14.] This conclusion is enforced by SDCL 43–4–42. SDCL 43–4–42 provides a "transfer that is subject to [disclosure requirements] is not invalidated solely because a person fails to comply with [disclosure requirements]," but subjects a person to liability for repairs suffered for intentional or negligent violation of the disclosure requirements. Interpreting a similar provision in *Loughrin,* the California Court of Appeals concluded: "The contemplation of failure to abide by the requirements of the statute, as contained within the statute itself, indicates that the purpose of the statute is to facilitate private transactions rather than impose regulations for the general public benefit." 15 Cal.App.4th at 1194, 19 Cal.Rptr.2d at 164.

[¶ 15.] In the present case, buyer expressed an interest in the property prior

to seller even contemplating a sale. The parties entered into a negotiated offer and purchase agreement and a subsequent contract for deed. Not once, but twice, Lucero acknowledges she had an opportunity to inspect premises. Moreover, she was obviously aware of the need to make improvements to the property, given her insistence that a provision in the contract, which required Lucero to obtain Van Wie's permission prior to expending repair costs greater than $5,000, be omitted from the contract. In fact, Lucero admitted at the time the contract was signed, she had already received bids on the renovation of the residence that exceeded $5,000.

[¶ 16.] Knowing all of the above, Lucero signed both the purchase agreement and the contract for deed, both of which provided the property was purchased "as is." Now she attempts to use the disclosure statutes to escape a freely entered contract. This court has previously stated: "The basic premise in the law is that when the parties reduce an agreement to writing and sign it, that written agreement is entitled to enforcement." *LPN*, 1996 SD 97, ¶ 15, 552 N.W.2d at 800 (citing *McDonald v. Miners & Merchants Bank, Inc.*, 310 N.W.2d 591, 593 (S.D.1981); SDCL 53–8–5). " 'As a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation or other wrongful act by another contracting party.' " *LPN*, 1996 SD 97, ¶ 13, 552 N.W.2d at 799 (quoting *Flynn v. Lockhart*, 526 N.W.2d 743, 746 (S.D.1995) (quoting 17A Am.Jur.2d *Contracts* § 224 (1991))).

> To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.

*Id.*

[¶ 17.] Under the facts of this case, where the buyer initiated the sale and was obviously familiar with the property she desired to purchase, the disclosure statutes do not provide the umbrella protection this buyer would like to assert. Buyer entered into an enforceable contract and purchased the property "as is," the result of which was to waive disclosure requirements.

[¶ 18.] We affirm.

[¶ 19.] MILLER, Chief Justice, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 20.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 21.] I have no great sympathy for this buyer under these circumstances, but I question whether the public policy of the State of South Dakota of *requiring disclosure* should be so easily waived and discarded. After all, it is too easy to insert an "as is" clause in a purchase agreement and in a contract for deed. In fact, it is common boilerplate language in purchase agreements, contracts, and printed forms.

[¶ 22.] The South Dakota Legislature made it clear in SDCL 43–4–38 that, unless excepted, all sellers shall furnish a completed copy of the property condition disclosure statement before the buyer makes a written offer. This seller is not excepted under SDCL 43–4–43 or any other provision of the chapter. In addition, the legislature provided, in SDCL 43–4–41, that:

> **Good faith disclosure required.** The seller shall perform each act and make each disclosure in good faith.

As a final precaution, the South Dakota Legislature took great pains to provide, in SDCL 43–4–44, a six and one-half page "SELLER'S PROPERTY CONDITION DISCLOSURE STATEMENT" form and made its use mandatory.

[¶ 23.] In *Engelhart v. Kramer*, 1997 SD 124, 570 N.W.2d 550, we recently held that a seller, who completed a seller's property condition disclosure statement, inadequate-

ly disclosed the problems, and, in fact, had not completed the disclosure statement in good faith. Now, in stark contrast, the majority holds that it is not even necessary to provide a disclosure statement to the buyer; in other words, you are *rewarded* if you do not try to comply with the law, but damned if you do try. One should never be rewarded for failing to comply with the law.

[¶ 24.] Whatever happened to the statement of law so frequently used by this court that "statutes mean what they say and that legislators have said what they mean." *Mid–Century Ins. Co. v. Lyon,* 1997 SD 50, ¶ 9, 562 N.W.2d 888, 891 (quoting *In re Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984)). Before we permit a waiver of the property condition disclosure statement as required by law, we should insist, at a minimum, upon a separate, signed waiver supported by independent consideration.